IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| ANTHONY TOLER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16cv598 (DJN) |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

On October 28, 2013, Anthony Toler ("Plaintiff") protectively filed for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), alleging disability from back pain, degenerative disc disease, a torn ligament in his left knee, a pinched nerve, varicose veins and depression, with an alleged onset date of July 6, 2012. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing his residual functional capacity ("RFC") by failing to adequately account for Plaintiff's moderate limitations in concentration, persistence and pace. (Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 13) at 3-8.) This matter now comes before the Court by consent of the parties pursuant to 28 U.S.C. §636(c)(1), on the parties' cross-motions

for summary judgment, rendering the matter ripe for review.[1] For the reasons that follow, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 12), GRANTS Defendant's Motion for Summary Judgment (ECF No. 14) and AFFIRMS the final decision of the Commissioner.

I. PROCEDURAL HISTORY

On October 28, 2013, Plaintiff protectively filed an application for DIB with an alleged onset date of July 6, 2012. (R. at 200-01.) The SSA denied the claim initially on March 25, 2014, and again upon reconsideration on August 28, 2014. (R. at 96-105, 107-18.) At Plaintiff's written request, the ALJ held a video hearing on November 5, 2015. (R. at 36-88.) On December 4, 2015, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because he could make successful adjustments to jobs that existed in significant numbers in the national economy. (R. at 17-30.) Specifically, Plaintiff could perform the duties of a cashier, merchandise maker and housekeeper. (R. at 29.) On May 13, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-3.)

II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1520(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform work existing in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

On November 5, 2015, the ALJ held a video hearing during which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (R. at 36-88.) On December 4, 2015, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 17-30.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 18-30.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date. (R. at 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and mild retrolisthesis with moderate to severe disc height loss and osteophytosis of the lumbar spine; minimal multilevel disc height loss and early osteophytosis of the thoracic

spine; osteophytosis of the thoracic spine; major depressive order; generalized anxiety disorder; and, cognitive disorder. (R. at 19-20.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the listings. (R. at 20-22.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 22-28.) Plaintiff could never climb ladders, ropes or scaffolds, but could occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl. (R. at 22.) The ALJ also found that Plaintiff could tolerate only occasional exposure to workplace hazards, such as unprotected heights and moving mechanical parts, and he could frequently reach bilaterally. (R. at 22.) Finally, the ALJ limited Plaintiff to simple, routine and repetitive tasks involving only simple work-related decisions. (R. at 22.)

At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (R. at 28.) Finally, at step five, the ALJ concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 28-29.) Specifically, Plaintiff could work as a cashier, merchandise maker and housekeeper. (R. at 29.) Therefore, he did not qualify as disabled. (R. at 29-30.)

## IV. ANALYSIS

Plaintiff, fifty-two years old at the time of this Opinion, previously worked as a technician at a physical rehabilitation center, airport screener and sales associate. (R. at. 215, 236.) He applied for Social Security benefits, alleging disability from back pain, degenerative disc disease, a pinched nerve, a torn ligament in the left knee, varicose veins and depression, with an alleged onset date of July 6, 2012. (R. at 200, 214.) Plaintiff's appeal to this Court alleges that the ALJ's RFC assessment and the hypothetical posed to the VE failed to properly

account for Plaintiff's moderate limitations in concentration, persistence and pace. (Pl.'s Mem. at 3-8.) Defendant responds that both the ALJ's RFC assessment and hypothetical adequately reflect Plaintiff's mental impairments. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 14) at 8-16.) For the reasons that follow, the ALJ did not err in his decision.

### A. The ALJ's RFC Assessment Properly Accounted for Plaintiff's Moderate Limitations in Concentration, Persistence and Pace.

Relying on *Mascio*, Plaintiff argues that the ALJ's RFC assessment failed to properly account for Plaintiff's mental limitations. (Pl.'s Mem. at 3-8.) In *Mascio*, the Fourth Circuit stressed the distinction between the ability to perform simple tasks and the ability to stay on task. 780 F.3d at 638. Only an RFC assessment that includes the latter limitation sufficiently reflects a claimant's difficulties with concentration, persistence and pace. *Id.* Plaintiff argues that remand must occur here, because the ALJ's RFC, which limited Plaintiff to simple, routine, repetitive tasks involving simple decisions, did not adequately account for Plaintiff's moderate limitations in concentration, persistence and pace.[2] (Pl.'s Mem. At 3-8.) Defendant responds that substantial evidence, including Plaintiff's mental status examinations and Plaintiff's activities of daily living, supports the ALJ's RFC assessment. (Def.'s Mem. at 2-3, 10-16.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.945(a)(1), 404.1520(a)(4)(iv). In analyzing a claimant's disabilities, the ALJ must first assess the nature and extent of a claimant's limitations and then determine the claimant's

---

[2] Plaintiff concedes that "[a]t best, the ALJ's RFC addresses only a limitation on pace with no corresponding limitations for concentration and task persistence deficiencies . . . ." (Pl.'s Mem. at 3-4.)

RFC for work activity on a regular and continuing basis. § 404.1545(b). Generally, the claimant shoulders the responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. § 404.1545(a)(3). The RFC must incorporate impairments that find a basis in the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 404.1545(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996), at *5). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p, at *7).

Social Security Ruling 85-16 provides additional instruction for the evaluation of mental impairments that may affect a claimant's ability to perform SGA, but do not meet the severity of a medical listing at step three. SSR 85-16, at *1. For these less severe mental impairments, the ALJ may not presume that the claimant is, or is not, capable of engaging in SGA. *Id.* Instead, the mental impairments' effects on the claimant "must be demonstrated through a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance." *Id.*

"Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

7

inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). In *Mascio*, the ALJ neglected to discuss the claimant's ability to perform certain functions for a full workday — a troubling omission in light of conflicting evidence in the record. *Id.* at 637. The Fourth Circuit remanded, because the ALJ's opinion lacked the analysis required for a meaningful review and left the court "guess[ing] about how the ALJ arrived at her conclusion . . . ." *Id.* at 636-37.

An ALJ satisfies *Mascio* by "providing a detailed discussion of Plaintiff's capacity for concentration, persistence, or pace." *See Thomas v. Colvin*, 2016 WL 1070826, at *4 (E.D. Va. Mar. 16, 2016) (finding *Mascio* satisfied because substantial evidence supported the RFC, and finding no inconsistency in the ALJ's assessment of the plaintiff's concentration, persistence or pace limitations). Multiple district courts in the Fourth Circuit have held that the ALJ's RFC assessment satisfies *Mascio* as long as it provides a detailed discussion of the plaintiff's capacity for concentration, persistence or pace. *See Sizemore v. Colvin*, 2016 WL 483140, at *3 (W.D.N.C. Feb. 5, 2016) (holding that the ALJ satisfied *Mascio* because he specifically explained how the plaintiff's limitations translated into work limitations); *Mitchell v. Colvin*, 2015 WL 5690899, at *5-7 (W.D. Va. Sept. 28, 2015) (distinguishing *Mascio*, because the ALJ relied on medical evidence to support his conclusion and did not summarily conclude that a limitation of simple, unskilled work accounted for the plaintiff's moderate impairment in concentration, persistence and pace); *St. Clair v. Colvin*, 2015 WL 5310777, at *6 (W.D. Va. Sept. 11, 2015) (an RFC assessment relying on medical opinion evidence that the plaintiff could "perform simple and repetitive tasks and maintain regular attendance in the work place," despite having moderate impairment in concentration, satisfied *Mascio*).

These cases establish that *Mascio* did not create a *per se* rule that a plaintiff's moderate impairment in concentration, persistence or pace always translates into an RFC limitation. 780 F.3d at 638; *Mitchell*, 2015 WL 5690899, at *7. Rather, *Mascio* highlighted the ALJ's duty to review the evidence and explain his decision when the claimant has moderate limitations in concentration, persistence or pace. 780 F.3d at 638.

### 1. The ALJ's Discussion of Plaintiff's Moderate Limitations in Concentration, Persistence and Pace Satisfies *Mascio*.

At step three, the ALJ found that Plaintiff had "moderate difficulties in concentration and persistence and no significant limitation in pace." (R. at 21.) To support this finding, the ALJ drew from Plaintiff's function report and testimony, noting that Plaintiff managed money independently without difficulty, as well as shopped in stores, by mail and online. (R. at 21.) The ALJ acknowledged that while Plaintiff sometimes required reminders to go places, he managed stress and changes in his routine. (R. at 21.) The ALJ included statements from Plaintiff's testimony regarding his problems with short-term memory and concentration, but also noted that Plaintiff used his laptop to surf the Internet, check emails, read about automobiles and access Facebook. (R. at 21, 27.) These activities, the ALJ explained, suggested that Plaintiff had only "limited difficulty with concentration, persistence, and pace." (R. at 21.)

Giving Plaintiff the "maximum benefit," the ALJ concluded that Plaintiff's RFC limited him to simple, routine and repetitive tasks involving only simple work-related decisions. (R. at 21-22.) To address Plaintiff's alleged problems with concentration and memory, the ALJ noted that Plaintiff's complaints conflict with medical records showing normal attention and memory and unremarkable mental status examinations. (R. at 26-27.) The ALJ again highlighted Plaintiff's statements about using a laptop and the Internet, reading about automobiles and

maintaining email and Facebook accounts, and concluded that Plaintiff's memory and concentration "are not as limited as alleged." (R. at 27.)

To support the mental RFC assessment, the ALJ discussed Plaintiff's testimony, medical records, activities of daily living and Plaintiff's global assessment functioning ("GAF") scores. (R. at 23-28.) First, while discussing Plaintiff's testimony, the ALJ noted that Plaintiff received treatment for depression with medication and hospitalization, and although Plaintiff suffered side effects, the medication helped to a degree. (R. at 24.) During the video hearing, Plaintiff's counsel argued that Plaintiff required alternation between sitting and standing every ten minutes, but the ALJ observed that Plaintiff never stood once during the hour and seventeen-minute hearing. (R. at 26-27, 72.) Second, the ALJ discussed Plaintiff's medical records and history with depression, noting unremarkable and/or normal findings in Plaintiff's mental status exams in 2014 and 2015. (R. at 24-26.) Other than two psychiatric hospitalizations, the ALJ stated that Plaintiff received "limited treatment for his mental impairments and reported improvement of his symptoms with medication." (R. at 26.) Third, the ALJ discussed Plaintiff's activities of daily living, such as making meals, occasionally doing laundry, cleaning and handling personal needs. (R. at 27.) The ALJ explained that these activities "strongly suggest a retained functional ability consistent with the ... [RFC]." (R. at 27.) Finally, the ALJ gave little weight to Plaintiff's GAF scores, which indicated serious to mild symptoms, because the scores "represent only a snapshot of functioning at a point in time and not a longitudinal indicator." (R. at 28.) Accordingly, the ALJ afforded greater weight to the record medical evidence that showed "mostly routine and conservative treatment" and "limited abnormalities." (R. at 28.)

Consistent with *Mascio*, the ALJ engaged in a detailed discussion regarding Plaintiff's moderate limitations in concentration, persistence and pace. The ALJ fashioned the mental RFC

assessment using Plaintiff's testimony, medical records, Plaintiff's activities of daily living and the ALJ's own observations from the video hearing. Additionally, the ALJ pointed to inconsistencies between Plaintiff's complaints of depression and other evidence in the record, and described why those inconsistencies detracted from Plaintiff's credibility. Thus, the ALJ properly explained why his findings regarding Plaintiff's moderate limitations in concentration, persistence and pace did not translate into RFC limitations beyond simple, routine and repetitive tasks involving only simple work-related decisions. Accordingly, *Mascio* does not warrant remand.

### 2. Substantial Evidence Supports the ALJ's Mental RFC Assessment.

Plaintiff's medical records substantiate the ALJ's findings that Plaintiff received limited medical treatment for his mental impairments, that medication improved Plaintiff's symptoms of depression, and that Plaintiff usually had normal findings on his mental status examinations.

On January 16, 2014, Plaintiff presented to Central Virginia Community Health Center ("CVCHC") with back pain. (R. at 331.) Brian Blackwell, M.D., examined Plaintiff and found no symptoms of headache, blackouts, tingling or memory loss. (R. at 331.) Dr. Blackwell noted that Plaintiff appeared awake, alert and in no acute distress. (R. at 332.) Plaintiff exhibited a normal mood with appropriate judgment and affect, good insight, as well as proper orientation to time, place and person. (R. at 332.) Plaintiff's psychiatric exam showed mild depressive symptoms. (R. at 332.) In the two weeks before his visit, Plaintiff reported little interest in doing things and sometimes had trouble concentrating during activities like reading or watching television. (R. at 332.) However, Plaintiff reported that he did not feel down, depressed or hopeless, and he had no suicidal thoughts. (R. at 332.)

On June 2, 2014, Plaintiff returned to CVCHC for a follow-up visit. (R. at 342.) Plaintiff complained of depression in addition to his back pain and varicose veins. (R. at 342.) Plaintiff reported feeling depressed for several years. (R. at 342.) Dr. Blackwell noted that despite a previous referral, Plaintiff had not sought psychiatric treatment. (R. at 342.) Plaintiff had no symptoms of anxiety nor any suicidal thoughts or attempts. (R. at 342.) Plaintiff again appeared awake, alert and in no acute distress. (R. at 343.) Plaintiff's psychiatric exam also showed normal mood and affect, appropriate judgment, good insight and proper orientation to time, place and person. (R. at 343.) Dr. Blackwell prescribed a trial of Celexa to treat Plaintiff's depressive disorder and referred Plaintiff to counseling. (R. at 343.)

On August 12, 2014, Plaintiff presented to CVCHC for a triage and brief consultation with licensed clinical psychologist Dave Strelcher, Ph.D. (R. at 350-51.) Plaintiff reported feeling depressed with occasional irritability and anxiety. (R. at 350.) Plaintiff admitted that he experienced suicidal ideations in the past, but denied having such thoughts in recent times. (R. at 350.) Plaintiff's mental status examination revealed that he maintained good eye contact and proper orientation to time, place and person. (R. at 350.) Plaintiff had clear and goal-directed thoughts. (R. at 350.) Although Dr. Strelcher noted a "mildly dysphoric" mood and affect, Plaintiff's recent and remote memory appeared grossly intact. (R. at 350.) Dr. Strelcher diagnosed Plaintiff with dysthymic disorder and offered antidepressant medications and supportive counseling as treatment options. (R. at 351.) These 2014 medical records support the ALJ's findings that Plaintiff's mental status examinations typically revealed normal findings.

On January 27, 2015, Plaintiff returned to CVCHC requesting x-rays of his upper back. (R. at 388.) Plaintiff primarily complained of back pain. (R. at 388.) Dr. Blackwell noted

Plaintiff's history of depression, but Plaintiff demonstrated proper orientation to time, place and person, did not appear in any acute distress and showed no signs of memory loss. (R. at 389.)

On March 23, 2015, CJW Medical Center ("CJW") admitted Plaintiff for depression. (R. at 426.) In the emergency room, Plaintiff reported that he had unsuccessfully attempted to treat his depression by seeing a physician and taking medication. (R. at 426.) The treating staff at CJW diagnosed Plaintiff with major depressive disorder and chronic pain. (R. at 426.) Joseph C. Mason, M.D., noted that Plaintiff felt depressed and suicidal. (R. at 429, 431-32.) However, Plaintiff appeared alert, oriented and in no acute distress. (R. at 429.) Treatment notes from Maria C. Haine, M.D., revealed that, by the time of Plaintiff's discharge on March 27, 2015, Plaintiff denied suicidal ideation. (R. at 426.) Dr. Haine also noted that Plaintiff "had a stable course of admission" and responded well to medication prescribed for sleep and anxiety. (R. at 426.) Cymbalta also improved Plaintiff's symptoms, which the treating staff at CJW instructed Plaintiff to continue taking upon discharge. (R. at 426, 442.)

On March 31, 2015, Plaintiff presented to Crossroads-Farmville Clinic ("Crossroads") for a follow-up appointment after his voluntary hospitalization. (R. at 362.) Mark Anderegg, a social worker, completed Plaintiff's mental health evaluation. (R. at 362.) Plaintiff reported fatigue, low energy, poor motivation and trouble socializing. (R. at 362.) Plaintiff also claimed that he could not complete basic tasks, such as cooking, cleaning and buying groceries. (R. at 362.) Plaintiff stated that he struggled with his memory after being "beaten up at a car show badly." (R. at 362.) Mr. Anderegg observed Plaintiff's flat affect. (R. at 362.) Although Plaintiff admitted himself to the hospital for depression about one week earlier and reported feeling suicidal at that time, he denied experiencing suicidal thoughts in the two to four weeks before this visit. (R. at 362.) Plaintiff's mental status examination results showed dysphoric

13

mood, poor eye contact and impaired memory. (R. at 364.) However, Plaintiff's concentration and attention remained within normal limits. (R. at 364.) Mr. Anderegg concluded that Plaintiff needed medication and case management. (R. at 364.)

On April 2, 2015, Plaintiff returned to Dr. Blackwell. (R. at 391.) Physical examination revealed no symptoms of memory loss. (R. at 392.) Plaintiff reported symptoms of depression, but had no suicidal thoughts or attempts. (R. at 392.) Plaintiff appeared alert, in no acute distress and properly oriented to time, place and person. (R. at 392.) He also exhibited appropriate judgment, good insight and a normal mood and affect. (R. at 392.) Dr. Blackwell recommended counseling and that Plaintiff continue to take Cymbalta. (R. at 392.)

On May 15, 2015, Plaintiff returned to Crossroads for a psychiatric assessment with Steven Eisenstein, M.D. (R. at 366.) Plaintiff reported that his anxiety medication helped him calm down and that since taking Cymbalta, he felt less depressed and did not have any suicidal thoughts. (R. at 366.) Although Plaintiff presented with a depressed mood and affect, Dr. Eisenstein's examination revealed mostly normal findings, including intact recent and remote memory and intact attention and concentration. (R. at 367-68.) Dr. Eisenstein diagnosed Plaintiff with major depressive order without psychotic features, but noted that Plaintiff exhibited a partial response to his medications. (R. at 368.)

On July 4, 2015, Plaintiff presented to CJW with an arm injury. (R. at 415.) He reported that another individual had stabbed him with a six-inch knife. (R. at 415.) Plaintiff had no other complaints at this visit. (R. at 415.) Todd J. Reiman, M.D., examined Plaintiff. (R. at 420.) Plaintiff showed normal mood and affect, appeared alert, oriented and in no acute distress. (R. at 417.)

On July 10, 2015, Plaintiff had a follow-up appointment with Dr. Eisenstein. (R. at 369.) Plaintiff reported that he continued to take Cymbalta, and he displayed intact recent memory, remote memory, attention and concentration. (R. at 369.) Plaintiff also demonstrated normal mood and affect, normal thought processes, associations and orientation to person, place, time and situation. (R. at 369.) Dr. Eisenstein's progress notes stated that Plaintiff "[was] doing okay with his depression, despite" the recent stabbing. (R. at 370.)

On August 24, 2015, Plaintiff presented to CVCHC with complaints of varicose veins in his legs. (R. at 393.) Plaintiff showed no symptoms of memory loss and appeared alert, in no acute distress and properly oriented to time, place and person. (R. at 393-94.) He denied feeling down, depressed or hopeless in the two weeks before this visit. (R. at 394.) Dr. Blackwell continued Plaintiff's Cymbalta regimen. (R. at 393.)

On September 11, 2015, Plaintiff presented to CJW with chest pain. (R. at 400.) Dr. Reiman examined Plaintiff and described his condition as stable. (R. at 400-05.) Plaintiff demonstrated normal mood and affect, and appeared alert and oriented. (R. at 402.)

On September 24, 2015, Plaintiff returned to Crossroads with suicidal ideations. (R. at 371-72.) Plaintiff reported that he considered shooting himself in the head, but had not actually attempted suicide. (R. at 372.) Crossroads referred Plaintiff to Richmond Behavioral Health Authority ("RBHA"). (R. at 450.)

That same day, RBHA admitted Plaintiff for increased depression, anxiety and suicidal ideation. (R. at 450.) Plaintiff reported experiencing depression since high school. (R. at 449.) He felt hopeless and expressed fear that he would "lose control." (R. at 449.) Since his admission, Plaintiff denied any suicidal ideations. (R. at 450.) According to the discharge summary prepared by the RBHA staff, Plaintiff's symptoms subsided, and he presented a

brighter affect. (R. at 450.) Plaintiff adhered to his prescribed medications, actively engaged in his treatment program and focused on receiving assistance for disability benefits. (R. at 450.) The treating staff at RBHA discharged Plaintiff on October 1, 2015, with diagnoses of major depressive disorder, recurrent severe without psychotic features, generalized anxiety disorder and chronic pain due to trauma. (R. at 450.) The treating staff continued Plaintiff's Cymbalta prescription, prescribed additional medications for sleep, depression and anxiety, and suggested that Plaintiff participate in outpatient psychiatric services. (R. at 450-51.) Plaintiff's discharge notes reflect his history of noncompliance with recommended treatments. (R. at 451.)

As the ALJ noted, aside from Plaintiff's two hospitalizations, Plaintiff's mental status examinations usually revealed few, if any, abnormalities. (R. at 26, 332, 343, 367-69, 392-94, 402, 417.) Plaintiff's symptoms also improved with medication — another factor that the ALJ noted in his decision. (R. at 26, 366, 369-370, 426, 450.) The weight of the evidence contained in Plaintiff's medical records supports the ALJ's mental RFC assessment.

Additionally, Plaintiff's testimony and reported activities of daily living support the ALJ's findings that Plaintiff's memory and concentration impairments remain less severe than Plaintiff alleged. (R. at 27.) Plaintiff testified that he struggled with his memory, focus and concentration. (R. at 48-50.) Discussing his depression, Plaintiff testified that "[s]ome days it's worse than others." (R. at 62.) Plaintiff stated that his depression affects his ability to sleep at least twice per week, that he desired not to do anything and stayed in bed between fifteen and twenty days per month. (R. at 63-64.) However, Plaintiff also testified that he cut the grass, occasionally cooked meals, occasionally washed his clothes at the laundromat and performed household chores, such as vacuuming, dusting and washing dishes. (R. at 70.) Notably, Mr. Anderegg's report from March 2015 stated that Plaintiff could not perform basic tasks such as

cooking and cleaning. (R. at 362.) Thus, Plaintiff's testimony in November 2015 that he could complete such tasks indicates his improved condition. Plaintiff also reported no issues with personal hygiene. (R. at 70-71.) He had a laptop and used the Internet "sometimes every day . . . to try to keep [his] mind active." (R. at 73.) Plaintiff enjoyed reading about old automobiles and muscle cars and maintained an email and Facebook account. (R. at 73.)

In his adult function report, Plaintiff stated that he prepared food or meals every few days or every other day, and he experienced no change in his cooking habits since the onset of his conditions. (R. at 228.) Plaintiff reported that his ability to handle money had also not changed. (R. at 230.) He could pay bills, count change and handle a savings account. (R. at 229.) Plaintiff performed household chores, but his back pain prolonged completion of these activities. (R. at 228.) Plaintiff's hobbies included watching boxing. (R. at 230.) He talked to others on the phone daily and sometimes attended church. (R. at 230.) Plaintiff described himself as very independent. (R. at 230.)

Plaintiff's medical records, coupled with his testimony and admitted activities of daily living, support the ALJ's findings regarding Plaintiff's moderate limitations with concentration, persistence and pace. Accordingly, substantial evidence supports the ALJ's decision.

### B. The Hypothetical Posed to the VE Properly Reflected Plaintiff's Mental Impairments.

Plaintiff also argues that, because the RFC failed to properly account for Plaintiff's moderate limitations in concentration, persistence and pace, the ALJ posed a flawed hypothetical to the VE. (Pl.'s Mem. at 3-8.) Defendant responds that substantial evidence supports the ALJ's RFC assessment and the corresponding hypothetical. (Def.'s Mem. at 2-3, 10-16.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, he can performing other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f). The Commissioner can carry her burden at the final step with the testimony of a VE. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). During the VE's testimony, the ALJ must pose hypothetical questions that accurately represent the claimant's RFC based on all of the record evidence and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Id.* Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.*; *Hines v. Barnhart*, 453 F.3d 559, 567 (4th Cir. 2006) (finding that the VE's testimony had no value, because he did not take all of the claimant's impairments into account).

In *Mascio*, the Fourth Circuit recognized that a hypothetical presented to a VE fails if the ALJ does not account for a relevant factor when determining a claimant's RFC. 780 F.3d at 638. The hypothetical question presented to the VE in *Mascio* failed to address the plaintiff's mental limitation, even though the ALJ found that the plaintiff had moderate difficulties in maintaining concentration, persistence and pace. *Id.* at 638. As discussed above, *Mascio* does not require automatic remand when an ALJ's hypothetical limits a claimant to simple, routine tasks or unskilled work. *Id.* ("For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert."). Rather, the ALJ must show his work. *See id.* at 640 ("The ALJ's lack of explanation requires remand."); *see also Patterson v. Comm'r of Soc. Sec. Admin.* 846 F.3d 656, 662 (4th Cir. 2017) (urging the ALJ,

18

on remand, to "follow[] the admonition they have no doubt heard since their grade-school math classes: Show your work.").

Here, the ALJ limited Plaintiff to simple, routine and repetitive tasks involving only simple work-related decisions. (R. at 22.) Unlike the ALJ in *Mascio*, the ALJ here included the additional limitation of "simple work-related decisions." (R. at 22.) Regardless of this inclusion, the ALJ satisfied *Mascio* by explaining why Plaintiff's moderate limitations in concentration, persistence and pace did not translate into RFC limitations beyond simple, routine and repetitive tasks involving only simple work-related decisions. Based on inconsistencies between Plaintiff's complaints and his medical records, testimony and activities of daily living, the ALJ found Plaintiff's struggles with memory and concentration "not as limited as alleged." (R. at 27.)

The weight of the evidence in the record also supports the ALJ's mental RFC assessment. Plaintiff's mental status examinations routinely showed normal findings with few abnormalities. (R. at 26, 332, 343, 367-69, 392-94, 402, 417.) Medication, specifically Cymbalta, improved Plaintiff's depression. (R. at 26, 366, 369-370, 426, 450.) Plaintiff testified that he performed some yardwork and household chores, cooked, cleaned, washed his clothes, frequently used the Internet, read about cars online and maintained an email and Facebook account. (R. at 70-71, 73.) Finally, in his adult function report, Plaintiff reiterated that he handled money without difficulty, cooked and performed household chores, stated that he watched television and described himself as very independent. (R. at 228-30.)

Because the ALJ's RFC assessment complies with *Mascio* and finds support of substantial evidence in the record, and the RFC reflected the same limitations that the ALJ articulated in the hypothetical, the ALJ did not pose a flawed hypothetical to the VE. Rather, the

hypothetical took into account all of Plaintiff's medically determinable physical and mental limitations, as described in the RFC. Accordingly, the ALJ did not err.

V. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 12), GRANTS Defendant's Motion for Summary Judgment (ECF No. 14), and AFFIRMS the final decision of the Commissioner.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

Let the clerk forward a copy of this Opinion to all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 25, 2017